DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, wherein appellant, Manuel Luna, was found guilty of felonious assault with a firearm specification, violations of R.C. 2903.11(A)(2) and 2941.145, a felony of the second degree. Appellant was sentenced to two years in prison on the conviction for felonious assault and to a mandatory three years in prison on the firearm specification; the court ordered that these sentences were to be served consecutively.
 {¶ 2} On the evening of June 4, 2003, the victim, Jason Carter, who resides on the east side of Toledo, Lucas County, Ohio, was walking home after his "boxing workout." It was approximately 9:00 p.m. to 9:30 p.m. Carter, who was 14 at the time, saw a large group of his friends on the street arguing with several Hispanic males. His friends were excited and yelling that there was going to be a fight. The confrontation ended with the Hispanic males leaving the scene in a blue Suburban. Carter then walked along with his friends. At the intersection of Yondota and Niese Streets, a motor vehicle pulled up and a Hispanic male, who Carter later identified as appellant, got out of the car and yelled, "You all niggers want to mess/fuck with my cousins?" He then fired the gun in the air and began shooting into the crowd. As everyone in the group scattered and began to run, the shooter looked directly at Carter and shot him twice in the right arm. Carter initially froze and then ran. He fell down and looked at his arm; it was all "lumpy," and a vein was "hanging out." The gunman got into the car and drove off.
 {¶ 3} Carter described his assailant as having "bangs," a mustache, and a "soul patch," which is a tiny spot of hair grown right below the lower lip. Based upon this description, Detective William Noon, who is assigned to the special enforcement bureau ("gang unit"), prepared a photo array containing six photographs of Hispanic males. When, on July 19, 2004, Noon showed the photo array to Carter, he immediately (within a time frame of a minute or less) identified appellant as the individual who shot him on June 4, 2003.
 {¶ 4} Because appellant was only 16 years old at the time of the alleged offense, the proceedings in this cause were first commenced in juvenile court by the filing of a complaint in delinquency. However, appellee, the state of Ohio, filed a motion, pursuant to R.C. 2152.12(B), to transfer jurisdiction to the Lucas County Court of Common Pleas, General Division. At an October 31, 2003 preliminary hearing to determine whether probable cause existed for the transfer, Carter testified that he saw appellant's face for "about five seconds."[1] While acknowledging that it was dark outside at the time of the shooting and that tree branches blocked some of the light, Carter vowed that appellant was under a street light that cast enough illumination to see the gunman's face. Carter pointed to appellant when asked whether the person who shot him was in the courtroom.
 {¶ 5} After both Carter and one defense witness testified, the juvenile court found that probable cause existed to show that appellant committed the charged act and continued the hearing until December 4, 2003, for the purpose of conducting a full investigation. Despite the fact that the trial court's December 9, 2003 judgment entry binding appellant over to be tried as an adult mentions the December 4, 2003 hearing, a review of the record of this cause reveals that a transcript of that hearing was neither requested nor filed in this appeal.
 {¶ 6} On February 3, 2004, appellant's trial counsel filed a motion to suppress all out-of court and in-court identification evidence due to "suggestive procedures" employed by law enforcement officers in obtaining an out-of-court identification of appellant by the victim, Jason Carter. At the hearing held on the motion to suppress, Carter reiterated that at the time of the shooting there was enough light for him to see appellant's face, He said that he was near the trunk of appellant's automobile, some 10 to 15 feet away from appellant, when appellant turned and shot him. Carter also testified that when Detective Noon asked him whether he remembered anything about his assailant's appearance, he told the detective about the mustache, bangs, and soul patch. Carter further stated that when asked about the assailant's height, he told the detective that the gunman was five foot seven or five foot eight inches tall.
 {¶ 7} In answer to questions posed about the out-of-court identification of appellant as the person who shot him, Carter indicated that Detective Noon called and asked whether he could come to Carter's house and show him some pictures of people who might be responsible for the shooting. When the detective arrived, he handed Carter the photo array and told him to "pick out" the person who shot him. According to Carter, he identified appellant as the gunman after looking at the photographs for only three seconds.[2]
 {¶ 8} The trial court, after holding a hearing, denied appellant's motion to suppress. Subsequently, appellant entered a guilty plea pursuant to North Carolina v. Alford (1970),400 U.S. 25, but was then permitted to withdraw that plea. Appellant then waived his constitutional right to a jury trial. The evidence offered at appellant's bench trial that is relevant to the disposition of his assignments of error is as follows.
 {¶ 9} Carter was questioned extensively on the issue of an out-of-court identification of appellant in a photo array. On direct examination, Carter said that at the time of the shooting he saw appellant for a "couple of minutes, maybe." Although he stated that the lighting was not "real good," he told the police that he could see his assailant's face. He therefore asserted that there was no doubt in his mind that appellant was the person who shot him.
 {¶ 10} On cross-examination, the defense elicited testimony from Carter indicating that he was in considerable pain at the time of the shooting and that his memory "was a little fuzzy on the person who shot" him until he saw the photo array. Appellant then said that he "remembered" appellant from the events that occurred on June 4, 2003. Trial counsel also questioned the propriety of the photo array by pointing out that the appellant's photograph was the only one depicting an individual with a soul patch. In response, Carter pointed out a photograph of another Hispanic male who appeared to have a soul patch.
 {¶ 11} Appellant testified in his own defense. He claimed that he and six of his friends decided to go to the east side "just to walk around or whatever." According to appellant, one of his friend's father, Arturo Perez, Sr., who owns a blue Chevy Suburban, drove them to the east side and then left. Appellant claimed that as he and his friends were walking around, a large group of people started coming toward them and yelling at them. While he and his friends argued with the group, Arturo Perez, Jr. called his father and asked him to come and pick them up. Mr. Perez picked up the group and took him to his home. Appellant contended that he stayed all night at the Perez residence.
 {¶ 12} During cross-examination, however, appellant admitted that Arturo Jr. was on the telephone trying to find more "guys" to fix the problem encountered on the east side. He maintained that Arturo heard gunfire while he was talking to his cousin, Josh Herrera. Appellant then testified that it must have been Herrera who shot Carter. In rebuttal, the state called Detective Noon, who stated that Herrera does not resemble Luna in any way.
 {¶ 13} In appellant's timely appeal of his conviction, he asserts that the following errors occurred in the proceedings below:
 {¶ 14} "The Juvenile Division abused its discretion in relinquishing jurisdiction to the General Division thereby allowing Luna to be tried as an adult.
 {¶ 15} "The trial court erred in not granting Luna's motion to suppress identification evidence thereby depriving him of his due process rights.
 {¶ 16} "The verdict was against the manifest weight of the evidence."
 {¶ 17} In his first assignment of error, appellant contends that the juvenile court abused its discretion by relinquishing jurisdiction to the Lucas County Court of Common Pleas, General Division.
 {¶ 18} When determining whether to transfer a case involving an allegedly delinquent child for criminal prosecution, the juvenile court is required to follow the procedures set out in R.C. 2152.12 and Juv.R. 30. R.C. 2152.12(B) and Juv.R. 30(C) govern the discretionary transfer of a child to be tried as an adult in a criminal case. At a hearing, the court may transfer the case if four criteria are met. R.C. 2152.12(B). (Emphasis added.)
 {¶ 19} First, the complaint filed in the juvenile court must allege that the child is delinquent as the result of committing an act that would be a felony if committed by an adult. R.C.2152.12(B). Second, the juvenile court must find that the child was 14 years of age or older at the time the act was charged. R.C. 2152.12(B)(1). Third, there must be probable cause to believe that the child committed the act charged. R.C.2152.12(B)(2). Fourth, after considering and weighing the applicable factors set forth in R.C. 2152.12(D) and (E), the court must find that the child is not amenable to care and rehabilitation in the juvenile system and that the safety of the community requires that the child be subject to adult sanctions. Additionally, "[t]he record shall indicate the specific factors that were applicable and that the court weighed." R.C.2152.12(B)(3). (Emphasis added.)
 {¶ 20} A juvenile court's decision to relinquish jurisdiction over a child is reviewed under an abuse of discretion standard.State v. Watson (1989), 47 Ohio St.3d 93, 95. A court abuses its discretion when its attitude in reaching a decision is unreasonable, unconscionable, or arbitrary. State v. Adams
(1980). 62 Ohio St.2d 151, 157.
 {¶ 21} In the case sub judice, the court made all four of the required findings in its judgment entry relinquishing jurisdiction over appellant. Appellant contends, however, that this judgment is devoid of any listing or discussion of the factors weighing for and against a bindover. R.C. 2152.12(B) does not specifically require a juvenile judge to list the factors set forth in R.C. 2152.12(D) and (E) in its judgment. In fact, our reading of the statute reveals that the factors should be weighed at the bindover hearing and can appear anywhere in the record, rather than in only the court's journal entry. Appellant failed to file a transcript of the R.C. 2152.12(B) hearing in this appeal. Thus, we are required to presume the validity of the proceedings below and find that the juvenile court did not abuse its discretion in transferring this cause to the General Division. Hartt v. Munobe (1993), 67 Ohio St.3d 3, 7,1993-Ohio-177; Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Appellant's first assignment of error is found not well-taken.
 {¶ 22} Appellant's second assignment of error contends that the trial court erred in denying his motion to suppress all out-of-court and in-court identification evidence.
 {¶ 23} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. Id. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993), 91 Ohio App.3d 623, 626;State v. Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 24} Due process requires suppression of an out-of-court identification, as well as any tainted in-court identification, if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." Manson v. Brathwaite (1977),432 U.S. 98, 116; Stovall v. Denno (1967), 388 U.S. 293, overruled on other grounds by Griffith v. Kentucky (1988), 479 U.S. 314;State v. Waddy (1992), 63 Ohio St.3d 424, 438. In examining the totality of the circumstances, a number of factors are weighed.Manson v. Braithwaite, at 113. These factors include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Id. at 114, citing Neil v. Biggers
(1972), 409 U.S. 188, 199-200. Finally, "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. UnitedStates (1968), 390 U.S. 377, 384.
 {¶ 25} In the instant case, Carter testified at the suppression hearing that he was able to directly observe and focus on appellant's face for at, the very least, five seconds before appellant shot him. Carter was then able to provide a very accurate description of appellant to Detective Noon. When presented with a photo array consisting of six photographs of Hispanic males, Carter, without any coaching, identified appellant as the person who shot him. He also displayed a level of certainty when he confronted and identified appellant as his assailant at the preliminary probable cause hearing and the hearing on the motion to suppress. Although there was an approximately six week period between the time of the shooting and the time Carter first identified appellant as his assailant, we must conclude, under the totality of the circumstances, that the procedures used were not unduly suggestive of appellant's guilt and that Carter's identification of appellant was reliable. Therefore, appellant's second assignment of error is found not well-taken.
 {¶ 26} Appellant's third assignment of error alleges that the trial judge's verdict is against the manifest weight of the evidence. The sole basis for this allegation is the victim's allegedly marginal and tainted identification of appellant as the person who shot him.
 {¶ 27} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. This court sits as a "thirteenth juror" and reviews the whole record, weighs the evidence and all reasonable inferences and considers the credibility of the witnesses. Id. Based upon this review, we must determine "whether in resolving conflicts in the evidence, the judge clearly lost his way "and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Nevertheless, a reversal on the manifest weight of the evidence should be made only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387. Moreover, our ability to determine credibility is not unlimited. State v. Lundberg, 2d Dist. No. 19098, 2002-Ohio-1811, at ¶ 8. This limited review is required due to the fact that determinations of credibility are within the province of the trier of fact. Id. at ¶ 9. See Statev. Dehass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Consequently, it is the trier of fact who may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." State v. Raver,
10th Dist. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v.Antill (1964), 176 Ohio St. 61, 67.
 {¶ 28} Thus, where, as here, the identification of the offender rests upon the credibility of the witnesses, we must accord great deference to the trial court's determinations.Lundberg at ¶ 11. In doing so, we conclude that Carter's testimony proved, beyond a reasonable doubt, that appellant knowingly caused serious physical harm to this victim by means of a deadly weapon, specifically, a firearm.[3] Appellant's third assignment of error is found not well-taken.
 {¶ 29} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Singer, P.J., Parish, J., concur.
[1] At trial, Carter testified that he saw appellant for a "couple of minutes." This change in time includes the time appellant was shooting into the air and into the crowd before he turned to face Carter.
[2] At the probable cause hearing Carter said that he looked at the photographs for one minute before naming appellant as the individual who shot him.
[3] R.C. 2903.11, reads, in material part: "(A) No person shall knowingly * * * (2) cause serious physical harm to another * * * by means of a deadly weapon * * *. R.C. 2923.11(B) defines "firearm" as * * * any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."