[Cite as *State v. Poole*, 2012-Ohio-5739.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98153

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ELIJAH POOLE

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556448

**BEFORE:**   Stewart, P.J., E. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   December 6, 2012

ATTORNEY FOR APPELLANT

Edward M. Graham
13363 Madison Avenue
Lakewood, OH    44107


ATTORNEYS FOR APPELLEE

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Brian R. Radigan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶1} Following his bindover from the juvenile division, defendant-appellant Elijah Poole pleaded guilty to a single count of aggravated robbery with a one-year firearm specification. The court accepted the plea and sentenced him to six years served consecutive to a one-year term for the firearm specification. In this appeal, Poole complains that the juvenile division should not have ordered his transfer to the general division because (1) the court failed to state its specific reasons in support of

bindover on the record and (2) the court abused its discretion by finding the amenability factors set forth in R.C. 2152.12(D) justified his transfer.[1]

I

{¶2} R.C. 2152.12(B)(3) states that if the juvenile court transfers a delinquency case, "[t]he record shall indicate the specific factors that were applicable and that the court weighed." Poole argues that the court's journal entry authorizing the transfer did not indicate the specific factors upon which the court relied.

{¶3} Contrary to Poole's assertions, R.C. 2152.12(B)(3) only requires that the specific factors the court relied on to authorize the transfer appear in the "record." This does not mean that the specific factors must appear in the journal entry authorizing the transfer. *See State v. Douglas*, 20 Ohio St.3d 34, 36, 485 N.E.2d 711 (1985) (holding that no written findings were required under prior version of transfer statute and juvenile rule regarding transfer); *State v. Erwin*, 10th Dist. No. 09AP-918, 2012-Ohio-776, ¶ 14; *State v. Moorer*, *supra,* at ¶ 34; *State v. Luna*, 6th Dist. No. L-05-1245, 2006-Ohio-5907, ¶ 21. The transcript of the bindover hearing shows that the court placed on the record the specific factors upon which it relied to justify the transfer. It thus fulfilled its obligation under R.C. 2152.12(B)(3).

---

[1]A guilty plea made following a bindover or transfer from the juvenile division does not waive the right to appeal the bindover or transfer. *See*, *e.g.*, *State v. Pruitt*, 11th Dist. No. 2001-T-0121,

II

{¶4} The primary issue in this appeal is whether the court abused its discretion by transferring the case to the general division of the court of common pleas. Poole argues that the state failed to offer sufficient evidence to establish probable cause to believe that he committed the charged acts and that questions regarding his emotional and intellectual maturity indicated that he was more amenable to care and rehabilitation within the juvenile justice system.

A

{¶5} R.C. 2152.12(B) states that a juvenile court may transfer a complaint alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult if (1) the child was 14 years of age or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged; and (3) the child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-99, 923 N.E.2d 584, ¶ 12.

{¶6} Juvenile courts are given wide discretion to transfer a case, *State v. Watson*, 47 Ohio St.3d 93, 95, 547 N.E.2d 1181 (1989), so we will not

reverse a decision to transfer absent an abuse of discretion. *State v. Golphin*, 81 Ohio St.3d 543, 546, 1998-Ohio-336, 692 N.E.2d 608.

B

**{¶7}** Prior to the hearing on whether he should be transferred to the general division for trial as an adult, Poole stipulated both that he was over 16 years of age at the time he allegedly committed the charged acts and that there was probable cause to believe that he committed acts which, if committed by an adult, would constitute the crimes of aggravated robbery, kidnapping, and felonious assault as charged in the complaint. Those stipulations not only satisfied the first and second elements of R.C. 2152.12(B)(1), but foreclosed Poole's right to raise the absence of probable cause as an issue on appeal. *See State v. Talbott*, 7th Dist. No. 07 MA 225, 2008-Ohio-6300, ¶ 27 (knowing and voluntary stipulation to waive probable cause hearing meant there were no "appealable issues with regards [sic] to the bindover proceeding.")

C

**{¶8}** The so-called "amenability" factors the juvenile court must consider both for and against a transfer from the juvenile court are set forth in R.C. 2152.12(D) and (E).

**{¶9}** The factors that the court found favoring transfer were: the victim suffered physical and economic harm as a result of the robbery; a

firearm was used in the commission of the robbery; Poole was under disposition as a delinquent child at the time of the robbery; previous juvenile sanctions were ineffective, indicating that Poole would not be rehabilitated in the juvenile system; and there would not be enough time to rehabilitate Poole. *See* R.C. 2152.12(D)(1), (5)-(9).

{¶10} The factors that the court found militating against transfer were: Poole was under the negative influence or coercion of another person; he may have not been emotionally, physically, or psychologically mature enough for the transfer; and that he had a mental illness or is a mentally retarded person. *See* R.C. 2152.12(E)(3), (6) and (7).

1

{¶11} Poole does not challenge any of the evidence supporting the court's findings in favor of transfer. Instead, he argues that the court abused its discretion by rejecting the testimony of a psychologist from the court's diagnostic clinic that Poole lacked the emotional and physical maturity to be placed in the adult criminal justice system.

{¶12} Poole was diagnosed with attention deficit hyperactive disorder ("ADHD") and oppositional defiant disorder ("ODD"). The psychologist who prepared a report for the court testified that neither disorder was considered a psychotic disorder. Poole did report having an "imaginary" friend, but the psychologist did not believe that this imaginary friend was a delusion, but

rather a "coping strategy or mechanism for a kid who in some ways is sort of schizoid or not really connected to other people and that doesn't cope in a mature fashion." The psychologist stressed, however, that he did not view Poole as having retreated into a fantasy world. He gave this opinion because he saw nothing to suggest that Poole had become so socially withdrawn or self-absorbed that Poole needed to create an "autistic world for himself that he hides within."

{¶13} The psychologist testified that Poole "voiced some thoughts about hurting himself" while in custody. Poole was placed on suicide watch and at one point informed staff that he actually tried to hurt himself. But there was no evidence to support Poole's claim of self-harming activity and the psychologist noted that the staff concluded that Poole was trying to be manipulative with his threats of self-harm.

{¶14} Poole scored poorly on the intellectual assessment administered to him. The psychologist said that Poole's low test scores on the intellectual assessment may have been purposeful given that he "answered some more difficult items well and easier items not so well." The psychologist said that answering harder questions correctly and easier questions incorrectly could be the result of a lack of effort, a low mood or depression, fatigue, or over medication. The psychologist also raised the specter of malingering, noting that Poole's low test scores might have been his attempt "to present in a more

sympathetic fashion." Poole's results on the Minnesota Multiphasic Personality Inventory ("MMPI") were marked "uninterpretable" because Poole was "over endorsing psychiatric symptoms and difficulties." In other words, Poole was "reporting problems that were a lot more serious than he truly has." The psychologist did not believe that Poole's answers to the MMPI were malingering because that would involve a different psychological profile — he believed that Poole "was perhaps naively exaggerating some of his difficulties."

{¶15} The psychologist testified that Poole scored on the low end for intellectual ability. Despite being nearly 17 years of age at the time of the hearing, Poole was "[p]robably in the 14-year old range in terms of his overall performance" in his test scores. These intelligence scores were differentiated from emotional maturity — the psychologist conceded that "[t]here's no science to this but he's probably more like a 14 or a 15-year-old emotionally."

{¶16} When asked to give his opinion about whether Poole was "physically mature," the psychologist said that Poole "falls within the range of adolescent" and that "[h]e's a large adolescent" but "doesn't appear to be buff, he doesn't have overpowering physical characteristics on an observation."

{¶17} The psychiatrist refused to give his opinion as to whether he believed that Poole was amenable to the juvenile court system. But noting Poole's lack of experience in a "serious jail setting for extended periods of

time," he allowed that "there would certainly be reasons to be concerned about how [Poole] would do in a more structured and punitive system." Put differently, the psychologist said:

> Because of this young mans [sic] combined intellectual, psychiatric, and chemical difficulties and because of his reported positive responses to services at PEP [the positive education program] there still may be an opportunity to question whether he could still benefit from services within the Juvenile Justice System.
>
> While the combination of his difficulties maybe [sic] challenging I would not rule out that there may be sufficient time and resources to still assist Elijah until he platos [sic] and reaches adulthood.

{¶18} Poole's case manager at the positive education program testified that Poole functioned "below academic level" but was nonetheless able to function in the program with a normal range of support. The case manager gave his opinion that Poole was not very mature, functioned "a little under grade level," and needed "a lot of social and emotional support." He said that since Poole had entered the positive education program, he had twice been involved with the juvenile justice system.

{¶19} The case worker testified that he saw no evidence of Poole's association with gang activity and that juveniles committed into custody often fake being in a gang. This testimony was contradicted by a police officer who investigated the underlying robbery. The police officer testified that when he arrested Poole, Poole was wearing a boot that bore gang symbols and a

homage to a former member of the gang who had been shot and killed during a robbery attempt. The officer gave his opinion that Poole was still a member of the gang because he knew Poole from past experience and had seen him associating with other known members of the gang shortly before the robbery.

2

{¶20} Taking this evidence into consideration, the court found that it had a "long history" with Poole, going back to 2007. This history included a felony robbery charge and a probation violation on that charge. In addition to the felony robbery count, the court noted that Poole had been charged with theft, another felony robbery, and burglary. The court noted that it presided over Poole's burglary charge and recalled that he did not take responsibility for it. The court found the court file showed issues about Poole lying while in home detention and being manipulative. It found that "the results of previous juvenile sanctions show that this is not working."

{¶21} The court also took into consideration the harm caused by Poole's robbery. The victim of the robbery, the owner of a convenience store, testified that two people entered the store and one of them hopped over the counter to approach him. The store owner was pistol whipped, causing bleeding and severe physical injury that required medical attention. In addition, a gun was fired three times during the commission of the robbery.

{¶22} As for the psychologist's opinions as to whether Poole was emotionally mature enough for transfer from the juvenile court, the court stated that it would "respectfully disagree" with the psychologist. It found that Poole "fits the same profile of many, many, many mandatory transfers that we have presided over." Noting that Poole was nearly 17 years old, the court acknowledged that Poole could only be committed for four years in the juvenile system. It found that the state proved that the safety of the community required that Poole be held beyond his 21st birthday, thus requiring his transfer from the juvenile system.

D

{¶23} Given the evidence detailed by the court, we cannot conclude that it abused its discretion by ordering Poole's transfer from the juvenile system.

{¶24} Although there was evidence showing that Poole was both intellectually and emotionally immature for his age, other evidence showed that Poole's past history of serious crime gave him an extensive history of delinquency in the juvenile system that tended to belie his claims of physical and emotional immaturity. He had a known gang association and had not shown himself to be amenable to rehabilitation within the juvenile system. Despite his seeming immaturity, Poole was shown to have lied or attempted to manipulate staff while under detention; for example, by exaggerating claims of suicide or self-harm.

**{¶25}** Poole places great weight on the psychologist's conclusion that Poole would be better served in the juvenile system. The court pointedly disagreed with the psychologist's conclusion, noting that it had dealt with Poole on a different case within the same calendar year. As the trier of fact, it was within the court's discretion to reject the psychologist's recommendation. Given Poole's prior history of felony delinquent acts and his lack of amenability to rehabilitation within the juvenile system, the court's conclusions were justified.

**{¶26}** The circumstances of the robbery involved in this case supported the court's finding that the safety of the community required that Poole be held beyond his 21st birthday. The victim of the robbery testified that he was injured when pistol whipped during the robbery. He also heard three gunshots. These violent acts, considered in conjunction with Poole's history of delinquency and gang affiliation, were sufficient to allow the court to find that the presence of a firearm during the robbery showed an escalation of Poole's violent tendencies. Taken together, the court's findings justifying Poole's transfer does not show an abuse of discretion.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR