The STATE of Ohio, Appellee,

v.

GOODWIN, Appellant.

[Cite as *State v. Goodwin,* 166 Ohio App.3d 709, 2006-Ohio-2311.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86309.

Decided May 11, 2006.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Edward Corrigan, Assistant Prosecuting Attorney, for appellee.

John H. Lawson, for appellant.

MARY EILEEN KILBANE, Judge.

{¶ 1} Tony Goodwin appeals from his plea and six-year sentence on one count of aggravated robbery, following a bindover from juvenile court to common pleas court. He claims that the trial court erred in finding probable cause and in allowing him to stipulate to a psychological evaluation and family records prior to his amenability hearing. He additionally claims that the trial court failed to engage in a proportionality analysis during sentencing and that his sentence violated *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. We affirm Goodwin's conviction, but vacate his sentence and remand the cause for resentencing in accord with the Ohio Supreme Court's recent pronouncement in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

{¶ 2} The record reveals that in the early morning hours of July 15, 2004, John Shields drove his yellow Ford Thunderbird to the Sunoco gas station on the corner of East 55th Street and Cedar Road in Cleveland to get some coffee before work. When he returned from the store and attempted to put his key into the car door, he felt a gun pressed to his back. He turned slightly and saw that the perpetrator was holding a sawed-off shotgun.

{¶ 3} The perpetrator demanded that Shields turn over his keys and cell phone and walk down Cedar Road. As Shields walked away from the gas station, the perpetrator asked him which key was the "right one." Shields turned around, got a clear view of his assailant and told him the proper ignition key. During this exchange, Shields saw a second person walk to his car to join the perpetrator; however, since Shields was facing the street as the man approached, he did not see his face. Shields continued to walk down Cedar Road, and after approximately ten minutes, he returned to the gas station and called the police.

{¶ 4} At approximately the same time as the robbery, Officer Kyle Stouges and his partner were patrolling the general area of the gas station when they saw what they described as a gold Thunderbird driving with its lights off. The officers activated the police cruiser's lights and sirens, but the car sped away southbound on Community College Boulevard toward East 55th Street. During the chase, Officer Stouges heard on the police radio that a Ford Thunderbird had been taken during a car-jacking at East 55th Street and Cedar Road. The radio dispatcher listed the car's license plate, and Officer Stouges verified that the stolen car was in fact the one he was chasing.

{¶ 5} According to Officer Stouges, the Thunderbird continued its escape at speeds that exceeded 100 m.p.h. until it crashed into a concrete median. Following the crash, the car's two occupants ran from the vehicle into a nearby field. Officer Stouges and his partner chased the two men on foot until they were captured. Both men were then taken into custody and advised of their rights.

{¶ 6} The two men were later identified as juveniles, D.A.[1] and Tony Goodwin. Both D.A. and Goodwin were placed into the back of the police cruiser and Shields was called to identify the young men. He identified D.A. as the man who had approached him with the gun, but was unable to identify Goodwin.

{¶ 7} A search of the stolen Thunderbird revealed a sawed-off shotgun tucked underneath the driver's side of the car, and a search of Goodwin's person revealed a small handgun in his pants pocket.

{¶ 8} Complaints were filed in juvenile court against both D.A. and Goodwin, and the state filed a Juv.R. 30 bindover motion to transfer Goodwin to common pleas court. In August 2004, a Juv.R. 30 probable-cause hearing was held, and the trial court found sufficient probable cause as to both defendants. While D.A. was found amenable to rehabilitation within the juvenile court system, the court proceeded to conduct a second hearing as to Goodwin's amenability.

{¶ 9} In October 2004, the juvenile court conducted this second hearing and Goodwin stipulated to both the Juvenile Court Diagnostic Clinic's psychological evaluation and juvenile probation department's family-history evaluation. Following the hearing, the juvenile court found that Goodwin was not amenable to the juvenile court system and transferred him to Cuyahoga County Common Pleas Court to be tried as an adult.

{¶ 10} Following the transfer to common pleas court, a grand jury indicted Goodwin on three counts of aggravated robbery in violation of R.C. 2911.01, with both one- and three-year firearm specifications under R.C. 2941.141 and 2941.145; one count of grand theft of a motor vehicle, in violation of R.C. 2913.02, with both one- and three-year firearm specifications; one count of carrying a concealed weapon, in violation of R.C. 2923.12; two counts of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, with both one- and three-year firearm specifications; one count of unlawful possession of a dangerous ordinance, in violation of R.C. 2923.17; one count of resisting arrest, in violation of R.C. 2921.33; and one count of having a weapon while under disability, in violation of R.C. 2923.13.

{¶ 11} In March 2005, Goodwin pleaded guilty to one count of aggravated robbery with all firearm specifications deleted, and all remaining counts were nolled. Goodwin was then sentenced to a prison term of six years. He appeals from this sentence in the assignments of error set forth in the appendix of this opinion.

---

1. This court protects the identity of juvenile offenders.

{¶ 12} In his first assignment of error, Goodwin asserts that the trial court's finding of probable cause was against the manifest weight of the evidence. We disagree.

{¶ 13} In its August 20, 2004 journal entry, the trial court found:

Upon the conclusion of all evidence presented relating to the matter herein and the arguments of counsel, the Court finds that the child was 16 years of age at the time of the conduct charged and that there is probable cause to believe that the child committed an act that would be the crime of Aggravated Robbery, Theft, Carrying Concealed Weapon, Unlawful Possession Dangerous Firearm Specification, 2913.02(A)(1) and 2941.141, 2941.145, Firearm Specification, 2923.12, 2923.17 and Firearm Specification 2945.145, 2941.145, 2921.33(A) of the Ohio Revised Code and classified as felonies of the first, fourth, and fifth degrees if committed by an adult. The Court dismisses firearm specifications found in counts 1, 2 and 4.

{¶ 14} Whenever a complaint is filed alleging that a child is delinquent for committing what would be a felony offense if committed by an adult, a juvenile court must hold a preliminary hearing to determine whether probable cause is present before transferring jurisdiction to the appropriate court. Juv.R. 30(A); R.C. 2151.26. A juvenile court may transfer the proceedings to the court of common pleas if it finds reasonable grounds that the child is not amenable to care or rehabilitation in the juvenile court system and that the safety of the community requires the child to be placed under legal restraint beyond the child's majority. Juv.R. 30(C).

{¶ 15} In *State v. Iacona* (2001), 93 Ohio St.3d 83, 752 N.E.2d 937, the Ohio Supreme Court addressed a similar determination of probable cause and held:

[A] juvenile court at a bindover hearing need not "find as a fact that the accused minor is guilty of the offense charged. It simply finds the existence of probable cause to so believe," quoting *State v. Whiteside* (1982), 6 Ohio App.3d 30, 36 [6 OBR 140, 452 N.E.2d 332]. The juvenile court in the case at bar described its responsibility in considering the issue of probable cause as being an obligation to determine whether there is "some credible evidence as to each and every element of the offense." The court of appeals, on the other hand, defined "probable cause" as "a flexible concept, grounded in probabilities, requiring more than a mere suspicion of guilt but a degree of proof less than that required to sustain a conviction," citing *Brinegar v. United States* (1949), 338 U.S. 160, 175 [69 S.Ct. 1302, 93 L.Ed. 1879]. These two standards, while subtly different, are not irreconcilable. We hold that the state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C.

2151.26(B). See *Zarzycki*, A Current Look at Ohio's Juvenile Justice System on the 100th Anniversary of the Juvenile Court (1999), 47 Cleve.St.L.Rev. 627, 647. In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt. Accordingly, in determining the existence of probable cause the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence by the respondent that attacks probable cause. See *Kent v. United States* [ (1966) ], 383 U.S. 541, at 563, 86 S.Ct. 1045, at 1058, 16 L.Ed.2d 84, at 98.

{¶ 16} At the probable-cause hearing, the state presented evidence from Shields that he was accosted by D.A. in the parking lot and a sawed-off shotgun was placed to his back. Although D.A. ordered Shields to walk away and down Cedar Road, Shields was able to see a second person approach his now stolen car. Shields described his stolen car as a yellow Thunderbird. Shortly after the incident, Officer Stouges encountered what he described as a gold Thunderbird driving without its lights on. A chase ensued and the two crashed the car into a median. Two men ran from the car together and were apprehended running from the scene. The Thunderbird was later identified as the one stolen from Mr. Shields. Police found a sawed-off shotgun in the car. When Goodwin was searched individually, the police found a starter pistol in his pants' pocket.

{¶ 17} As outlined in *Iacona*, 93 Ohio St.3d 83, 752 N.E.2d 937, the trial court was not required to find that Goodwin was *guilty* of the charged offense, only that the trial court evaluate the quality of the evidence presented as supporting probable cause. We find that the evidence contained sufficient facts to support the trial court's finding of probable cause.

{¶ 18} Goodwin's first assignment of error lacks merit. In his second assignment of error, Goodwin contends that the trial court erred in allowing him to stipulate to both his psychological evaluation and his family records at his amenability hearing without directly addressing him.

{¶ 19} When the trial court requested Goodwin's stipulation to the reports, counsel for Goodwin stated:

Your Honor, I will indicate that I've gone over with Tony the nature of the report, what it contains, and the conclusions that it draws. I've indicated to him how it would be used for this proceeding in the likelihood of going Downtown as an adult and based upon the report and at this time Tony has indicated to me that he would be willing to stipulate to the report and its findings, and with the hope that he be transferred Downtown earlier to pay a bond.

{¶ 20} Goodwin first contends that the court erred by accepting his stipulations without conducting a hearing in accord with Juv.R. 30(C). Juv.R. 30, entitled "Relinquishment of Jurisdiction for Purposes of Criminal Prosecution," states:

(A) Preliminary hearing.—In any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult. The hearing may be upon motion of the court, the prosecuting attorney, or the child.

* * *

(C) Discretionary transfer.—In any proceeding in which transfer of a case for criminal prosecution is permitted, but not required, by statute, and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, an amenability hearing shall be held to determine whether to transfer jurisdiction. The criteria for transfer shall be as provided by statute.

{¶ 21} On October 21, 2004, the trial court inquired as to Goodwin's stipulations and asked counsel for the state and for Goodwin if any witnesses would be called on the issue of amenability. After learning that no witnesses would be called, the court heard final arguments from the state. Counsel for Goodwin declined to make a final argument.

{¶ 22} Before making any pronouncement, the juvenile court acknowledged that it had reviewed the psychological report of Dr. Konieczny and had also reviewed Goodwin's family records. Based on these reports, the court found that Goodwin was not amenable within the juvenile system. It was only after making inquiries to counsel regarding witnesses and final arguments that the juvenile court found that Goodwin was not amenable to rehabilitation.

{¶ 23} The record reflects that the hearing conducted on October 21, 2004, was an amenability hearing. Admittedly, the amenability hearing was brief; however, this brevity had no reflection on the fact that such a hearing was called. We find that the juvenile court's acceptance of Goodwin's stipulations during this amenability hearing clearly did not take the place of the required hearing.

{¶ 24} For these reasons, this portion of Goodwin's second assignment of error lacks merit.

{¶ 25} Goodwin next argues that the juvenile court's acceptance of his stipulations without any determination that he understood that his stipulation was voluntary was a "waiver of various constitutional rights."

{¶ 26} Goodwin claims that the court made no effort to comply with Juv.R. 29(D), entitled "Initial Procedure Upon Entry of and Admission," which states:

The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

{¶ 27} We first note that while Goodwin asserts a violation of "various constitutional rights" by the court's alleged failure to determine the voluntariness of his stipulations, he fails to outline or explain which "rights" were actually violated.

{¶ 28} Since Goodwin also asserts a violation of Juv.R. 29, we turn to *In re Christopher R.* (1995), 101 Ohio App.3d 245, 247–248, 655 N.E.2d 280, in which this court explained the effect of the provisions of Juv.R. 29(D)(1) and (2) as follows:

Ohio courts have held that in a delinquency case, an admission is similar to a guilty plea made by an adult pursuant to a Crim.R. 11(C), in that it constitutes "a waiver of rights to challenge the allegations" [in the complaint]. *State v. Penrod* (1989), 62 Ohio App.3d 720, 723, 577 N.E.2d 424, 425. While there appears to be no reported Ohio cases which set forth the standard by which to measure a trial court's compliance with Juv.R. 29(D) in accepting an admission in a delinquency case, other courts of appeals have considered this issue and, similarly analogizing to Crim.R. 11(C) proceedings, held that the applicable standard for the trial court's acceptance of an admission is substantial compliance with the provisions of Juv.R. 29(D), without which the adjudication must be reversed "so that the juvenile may plead anew." *In re Meyer* (Jan. 15, 1992), Hamilton App. Nos. C–910292, C–910404 and C–9101568 [1992 WL 5843], unreported.

{¶ 29} Although Goodwin attempts to analogize his stipulations to a waiver of his amenability hearing and a waiver of juvenile court jurisdiction, this is not the case. As we previously determined, the juvenile court *did* conduct an amenability hearing, and therefore this hearing was not waived by the entrance of any stipulations. Therefore, Goodwin's stipulations to the two reports did not constitute a waiver of this hearing.

{¶ 30} Any further attempt to characterize the juvenile court's acceptance of these stipulations as "admissions" under Juv.R. 29 is also misplaced. *In re Christopher R.* compares Juv.R. 29 and Crim.R. 11, and analyzes the procedure surrounding a court's acceptance of a defendant's plea. Goodwin's stipulations

did not equate to a plea. Moreover, the records to which Goodwin stipulated are in no way tantamount to an admission of any of his indicted charges, and the juvenile court did not treat it as such.

{¶ 31} For these reasons, this portion of Goodwin's second assignment of error also lacks merit.

{¶ 32} In his third assignment of error, Goodwin asserts that his imposed sentence violates *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, by finding facts not found by the jury or stipulated to by Goodwin.

■ {¶ 33} In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court recently found portions of Ohio's statutory sentencing scheme unconstitutional. R.C. 2929.14(B), which requires judicial findings before the imposition of a sentence greater than the minimum, was among these sections. Id., paragraph one of the syllabus. As a result of the severance of this provision from Ohio's sentencing code, judicial fact-finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required. Id., paragraph two of the syllabus. See, also, *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus.

■ {¶ 34} *Foster* instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Id. at ¶ 104. Consequently, we remand this cause for resentencing consistent with *Foster*. Goodwin's third assignment of error has merit, albeit for different reasons. In his final assignment of error, Goodwin asserts error in the trial court's failure to analyze the two-year sentence of his co-defendant with Goodwin's six-year sentence. He challenges the "proportionality" of these sentences under R.C. 2929.11(B). Since we found that Goodwin's third assignment of error has merit and therefore must be remanded for resentencing, we find his fourth assignment of error moot.

{¶ 35} We affirm both the trial court's determination of probable cause and its acceptance of Goodwin's stipulations to his family and psychological reports, but remand the cause for resentencing in accord with the guidelines of the Ohio Supreme Court as outlined in *State v. Foster*, supra.

Judgment accordingly.

CELEBREZZE, P.J., and GALLAGHER, J., concur.

Appendix

Assignments of Error

I. The juvenile court erred in finding that there was probable cause to believe that the alleged delinquent committed the acts alleged against the manifest weight of the evidence.

II.  The juvenile court erred when it allowed Tony Goodwin, through legal counsel, to stipulate to the psychological evaluation and juvenile court family records at the amenability hearing without directly addressing him pursuant to the minimal requirements for accepting an admission under Ohio Juvenile Rule 29.

A.  Defendant Goodwin, through counsel, stipulated to the juvenile court psychological evaluation and family records without any determination by the juvenile court that he understood that said stipulating was voluntary, and it was a waiver of various constitutional rights.

B.  The juvenile court erred by accepting defendant Goodwin's stipulations at the amenability hearing, without conducting any hearing otherwise contrary to Ohio Juvenile Rule 30(c).

III.  A judge may not impose a sentence by finding facts not found by the juror stipulated to by the defendant and when he does so it violates *Blakely v. Washington,* 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403] (2004).

IV.  The sentencing court erred in failing to engage in a proportionality analysis in violation of R.C. 2929.11(B) and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.