[Cite as *State v. Walker*, 2024-Ohio-729.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                              No. 112633

    v.                              :

NASIR WALKER,                           :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-667510-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eben McNair, Assistant Prosecuting Attorney, *for appellee*.

Elizabeth Walker, Ohio Public Defender, and Victoria Ferry, Assistant State Public Defender, *for appellant*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Nasir Walker ("Walker"), appeals from his criminal convictions and sentence in the Cuyahoga County Court of Common Pleas. He raises the following assignments of error for review:

1. The trial court erred and abused its discretion when it transferred Nasir's case for criminal prosecution, in violation of R.C. 2152.12(B); Fifth and Fourteenth Amendments to the U.S. Constitution; and Article I, Section 10, Ohio Constitution.

2. Nasir Walker was deprived of his right to the effective assistance of counsel in juvenile court; Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.

{¶ 2} After careful review of the record and relevant case law, we affirm. However, we remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc entry correcting the clerical error in the sentencing journal entry.

## I. Procedural and Factual History

## A. Juvenile Court Proceedings

{¶ 3} In May 2021, the then 14-year-old Walker was named in a ten-count complaint in the Cuyahoga County Common Pleas Court, Juvenile Court Division, charging him with two counts of aggravated murder, four counts of murder, and four counts of felonious assault. Each count contained one- and three-year firearm specifications. The complaint stemmed from allegations that Walker participated in the shooting deaths of Ryan Tyler ("Tyler") and Zachery Cutner ("Cutner").

{¶ 4} Upon filing the complaint in the juvenile court, the state filed a discretionary motion for an order to relinquish jurisdiction for the purpose of criminal prosecution pursuant to R.C. 2152.10(B).

{¶ 5} In November 2021, the juvenile court conducted a probable cause hearing pursuant to Juv.R. 30 and R.C. 2152.10 and 2152.12. At the hearing, co-delinquent, T.S., testified on behalf of the prosecution. T.S. explained that he was familiar with Tyler and had purchased marijuana from him in the past. On May 7,

2021, T.S. contacted Tyler to purchase marijuana for himself and Walker. The drug transaction was later completed in Tyler's personal vehicle, which was parked in front of Walker's home.

{¶ 6} On May 8, 2021, T.S. contacted Tyler to purchase additional marijuana. T.S. testified that Tyler agreed to meet him at "the next street over" from Walker's home. Following this conversation, T.S., Walker, and co-delinquent, I.W., left Walker's home to meet Tyler. T.S. maintained that he was not in possession of a firearm. He further claimed that he had no reason to believe Walker or I.W. were in possession of a firearm at that time.

{¶ 7} Upon arriving at Tyler's vehicle, T.S. observed Tyler sitting in the driver's seat. Tyler was accompanied by a second individual, later identified as Cutner, who was seated in the front-passenger's seat. T.S. testified that he, Walker, and I.W. got into the back seat of the vehicle to complete the drug deal. T.S. testified that following a "friendly" conversation with Tyler and Cutner, he was given a bag containing marijuana and pills. (Tr. 36.) T.S. described the subsequent interaction as follows:

> After [Tyler] gave [the drugs] to me, he like, you need this stuff? I like, yeah. He like hold on, I got other stuff. I remember him reaching down under the seat, like under the steering wheel. I could see it like on the floor.
>
> I was looking out the corner of my eye out the window. I remember something pink, [Walker] took something pink out of his pocket. I just remember hearing boom. That's when (inaudible). I just remember boom, boom, and I remember running.
>
> And I thought I was stuck, like (inaudible), and that's when [Cutner] moved to the side, to his left and saw [Tyler]. He opened the passenger

door, stepped one foot, his right foot out, and Nasir peeked him. He fell. I got out of the car and I started running.

(Tr. 36-37.) T.S. later clarified that Walker began shooting at Cutner when he attempted to exit Tyler's vehicle. T.S. stated that the victims did not make any threatening comments prior to the shooting and that they did not appear to be in possession of a weapon. Ultimately, Tyler and Cutner did not survive the injuries sustained during the shooting.

{¶ 8} After the shooting, T.S., Walker, and I.W. fled the scene and returned to Walker's home. According to T.S., Walker indicated that he "froze up." (Tr. 47.) Walker further stated that "he just had to do it, he wanted to. He said, I did that to get * * * [credibility] with the Heartless Felons." (Tr. 47.)

{¶ 9} Detective Christopher Faunce ("Det. Faunce") of the Maple Heights Police Department testified that he was assigned as the lead investigator in this matter. In the course of his investigation, Det. Faunce processed the scene of the shooting, reviewed surveillance-video footage, reviewed Tyler's cell phone records, and executed a search warrant at Walker's residence. Regarding his observations at the scene, Det. Faunce testified that no firearms or weapons were located within Tyler's vehicle or in the possession of either Tyler or Cutner. Upon executing a search warrant at Walker's home, the investigating officers recovered a pink and silver colored 9 mm handgun.

{¶ 10} Based on the foregoing testimony, the juvenile court concluded that Walker was 14 years old at the time of the charged conduct and that there was

probable cause to believe that Walker had committed the acts charged in the complaint.

{¶ 11} Following the probable cause determination, the juvenile court conducted a hearing to assess whether Walker was amenable to care or rehabilitation within the juvenile system. At the hearing, the state argued that Walker was amenable to a transfer to the adult court based on (1) the severity of the offenses committed; (2) the lack of provocation; (3) Walker's involvement as the principal offender; (4) the gang-relative motive provided; (5) the physical vulnerability of the victims; (6) the use of a firearm; (7) Walker's emotional, physical, and psychological maturity; and (8) Walker's violent behavior in the juvenile detention center. In contrast, defense counsel argued that it would be inappropriate to transfer Walker to the adult court because he was only 14 years old at the time of the offense and had no prior adjudications in the juvenile system. No testimony was offered by the state or the defense.

{¶ 12} At the conclusion of the amenability hearing, the juvenile court relinquished jurisdiction to the general division after considering the factors set forth in R.C. 2152.12. In a corresponding journal entry, the juvenile court made the following findings:

> The court considered the relevant factors in favor of transfer pursuant to R.C. 2152.12(D) and against transfer pursuant to R.C. 2152.12(E) and makes the following findings:
>
> 1. The victim of the act charged [suffered] physical or psychological harm or serious economic harm as a result of the alleged act.

2.  The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.  The victims had their backs turned to the child when they were shot.  This is a minor factor in the court's decision.  The court notes the lack of case law on this factor.

3.  The child's relationship with the victim facilitated the act charged. The two victims were murdered during a drug deal arranged by a co-delinquent of the child.

5.  The child had a firearm on or about the child's person or under the child's control at the time of the act charged, and the child, during the commission of the act charged, allegedly used or displayed the firearm. The court finds that the firearm was fired nine times.

7. The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.  The court notes for the record, it does not say the result of any previous sanctions and programs (anywhere) in the juvenile system show that rehabilitation will not occur in the juvenile system.  The child had 11 previous suspensions and was offered counseling and he refused services.

8.   The child is emotionally, physically, or psychologically mature enough for the transfer.

9.   There is not sufficient time to rehabilitate the child within the juvenile system.

* * *

The court considered all the factors in (E), and finds that the only factor that applies is:

5.  The child previously has not been adjudicated a delinquent child.

The court finds that whether it uses a balancing test or whether the state is required to show the child is not amenable, by any standard of evidence, the court finds that the child is not amenable to be rehabilitated to the services and programing in the juvenile system, and that the safety of the community may require that he be held beyond his twenty-first birthday.

## B. Adult Court Proceedings

{¶ 13} Upon transfer to the general division court, Walker was named in a 16-count indictment, charging him with two counts of aggravated murder in violation of R.C. 2903.01(A) (Counts 1 and 2); two counts of aggravated murder in violation of R.C. 2903.01(B) (Counts 3 and 4); two counts of murder in violation of R.C. 2903.02(A) (Counts 5 and 6); two counts of murder in violation of R.C. 2903.02(B) (Counts 7 and 8); two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) (Counts 9 and 10); two counts of aggravated robbery in violation of R.C. 2911.01(A)(3) (Counts 11 and 12); two counts of felonious assault in violation of R.C. 2903.11(A)(1) (Counts 13 and 14); and two counts of felonious assault in violation of R.C. 2903.11(A)(2) (Counts 15 and 16). Each count carried one- and three-year firearm specifications.

{¶ 14} In March 2023, Walker retracted his formerly entered pleas of not guilty and pleaded guilty to two counts of murder, with three-year firearm specifications, as amended in Counts 5 and 6 of the indictment. The remaining counts were nolled.

{¶ 15} Upon accepting Walker's guilty pleas, the court proceeded directly with sentencing and imposed an aggregate prison term of 21 years to life. (Tr. 50, 53.)[1]

---

[1] The sentencing journal entry reflects that Walker was sentenced to 20 years to life in prison on the base offenses of murder in amended Counts 5 and 6. This is inconsistent with the trial court's imposition of a 15 years to life prison term on these offenses at the sentencing hearing. (Tr. 50, 53.) The sentencing journal entry must be corrected nunc pro tunc to reflect what actually transpired on the record.

{¶ 16} Walker now appeals from his convictions and sentence in the adult court.

## II. Law and Analysis

## A. Discretionary Transfer under R.C. 2152.12(B)

{¶ 17} In the first assignment of error, Walker argues the juvenile court abused its discretion by transferring his case for prosecution in the adult court "when the safety of the community could be adequately protected, there was appropriate time and resources in the juvenile system, and [he] was amenable to treatment."

{¶ 18} Juvenile courts have jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult. R.C. 2151.23. Under specified circumstances, however, a juvenile may be subject to a mandatory or discretionary transfer, also referred to as a "bindover procedure," from the juvenile court setting to adult court for criminal prosecution. Whether an alleged offender is subject to mandatory or discretionary transfer depends on such factors as the nature of the offense, the age of the child, and the child's prior criminal history. R.C. 2152.12(A) and (B); *Steele v. Harris*, 161 Ohio St.3d 407, 2020-Ohio-5480, 163 N.E.3d 565, ¶ 10.

{¶ 19} "Discretionary transfer affords juvenile court judges the discretion to transfer to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or who appear to be a threat to public safety." *State v. Nicholas*, 171 Ohio St.3d 278, 2022-Ohio-4276, 217 N.E.3d 745, ¶ 3,

citing R.C. 2152.12(B). On the other hand, mandatory transfer removes discretion from judges and requires the transfer of a juvenile to adult court in certain situations. *Id.*, citing R.C. 2152.12(A). This case involves discretionary transfer.

{¶ 20} In a discretionary transfer proceeding, the juvenile court may transfer the child to adult court for prosecution if it finds (1) that the child was at least 14 years old at the time of the charged act; (2) there is probable cause to believe that the child committed the charged act; and (3) "[t]he child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(1), (2), and (3). Before making a discretionary-transfer decision, the juvenile court must order an "investigation into the child's social history, education, family situation, and any other factor bearing on whether child is amenable to juvenile rehabilitation, including a mental health examination of the child by a public or private agency or a person qualified to make the examination." R.C. 2152.12(C).

{¶ 21} In making the amenability determination under R.C. 2152.12(B), the juvenile court must weigh the statutory factors in R.C. 2152.12(D) in favor of transfer against the statutory factors in R.C. 2152.12(E) against transfer. In addition, the court must indicate on the record the specific factors it weighed in making its determination. R.C. 2152.12(B)(3). A juvenile court's decision to exercise its discretion to transfer a juvenile to adult court must be supported by a

preponderance of the evidence. [2]  *Nicholas* at ¶ 35.  Further, the state bears the

burden of persuasion when it asks the juvenile court to transfer a juvenile's case to

adult court.  *Id*. at ¶ 27.  "Thus, the facts presented to the juvenile court with respect

to a discretionary transfer must persuade the court that the juvenile is not amenable

to care or rehabilitation in the juvenile system."  *Id*.

{¶ 22} The statutory factors set out in R.C. 2152.12(D) and (E) generally

address the personal characteristics of the juvenile, the juvenile's history in the

juvenile-court system, and the nature of the acts charged.  The provisions state as

follows:

> (D) In considering whether to transfer a child under division (B) of this section based on an act charged that would be a felony if committed by an adult, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:
>
> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> (3) The child's relationship with the victim facilitated the act charged.
>
> (4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
>
> (5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during

---

[2] "'"[A] preponderance of evidence means the greater weight of evidence. * * * The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium."'"  *Nicholas* at ¶ 29, quoting *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987), quoting *Travelers' Ins. Co. v. Gath*, 118 Ohio St. 257, 261, 160 N.E. 710 (1928).

the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

(E) In considering whether to transfer a child under division (B) of this section based on an act charged that would be a felony if committed by an adult, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 23} As recognized by this court, "[n]o one factor under R.C. 2152.12(D) or (E) is outcome determinative." *State v. Jordan*, 8th Dist. Cuyahoga No. 111547, 2023-Ohio-311, ¶ 11. If, by a preponderance of the evidence, the trial court concludes that the factors in favor of the transfer outweigh those against, the statutory analysis is satisfied. *Nicholas*, 171 Ohio St.3d 278, 2022-Ohio-4276, 217 N.E.3d 745, at ¶ 35.

{¶ 24} An appellate court reviews a juvenile court's determination regarding a juvenile's amenability to rehabilitation or treatment in the juvenile system under an abuse-of-discretion standard. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 14. An abuse of discretion occurs when a court exercises "its judgment[] in an unwarranted way[] in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. An abuse of discretion is evident where the trial court's decision lacks a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 25} Because our review under the abuse-of-discretion standard is deferential, as long as the juvenile court considered the appropriate factors under R.C. 2152.12(D) and (E), and there is some competent, credible evidence to support the juvenile's court's findings, there is no abuse of discretion in deciding whether to

transfer the case to the common pleas court. *Jordan* at ¶ 11, citing *Nicholas* at ¶ 73. Similarly, "'an offender's disagreement with the way the juvenile court weighed the factors is not a reason to reverse the court's decision.'" *Id.* at ¶ 12, quoting *State v. Cunningham,* 6th Dist. Lucas No. L-21-1136, 2022-Ohio-3497, ¶ 100, *State v. Ramsden*, 12th Dist. Clinton No. CA2020-11-016, 2021-Ohio-3071, ¶ 23.

{¶ 26} Preliminarily, we reiterate that Walker pleaded guilty to two counts of murder in the adult court after jurisdiction was relinquished by the juvenile court. Relying on several decisions issued by our sister districts, the state contends that Walker's amenability arguments do not relate to a jurisdictional defect in the bindover proceedings. Thus, the state urges us to find that Walker waived his right to challenge the sufficiency of the evidence supporting the juvenile court's amenability finding by entering guilty pleas in the adult court. *State v. Powell*, 4th Dist. Gallia No. 20CA3, 2021-Ohio-200, ¶ 34 ("If an error in a bindover proceeding is nonjurisdictional, it can be waived by a voluntary guilty plea or forfeited by the failure to preserve it in the juvenile court proceedings."); *State v. Zarlengo*, 2021-Ohio-4631, 182 N.E.3d 458, ¶ 46 (7th Dist.) ("[W]e conclude a defendant who pleads guilty in the general division of the common pleas court waives the ability to contest the sufficiency and weight of the evidence presented at the probable cause hearing in the juvenile court."); *State v. Moore*, 4th Dist. Lawrence No. 20CA10, 2022-Ohio-460, ¶ 24 ("By pleading guilty to the offenses in common pleas court, Moore waived the alleged errors in the bindover proceedings."). *See also Smith v. May*, 159 Ohio St.3d 106, 2020-Ohio-61, 148 N.E.3d 542, ¶ 31 ("[N]ot every requirement [in R.C.

2152.12], even if mandatory, is jurisdictional in nature."). *But see State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850, ¶ 17 (8th Dist.) (considering defendant's claim of improper bindover due to insufficiency of probable cause evidence despite guilty plea); *State v. Goodwin*, 166 Ohio App.3d 709, 2006-Ohio-2311, 852 N.E.2d 1282, ¶ 11 (8th Dist.) (considering defendant's claim that evidence failed to support probable cause for mandatory transfer even though defendant pleaded guilty); *State v. Kitchen*, 5th Dist. Ashland No. 02CA056, 2003-Ohio-5017, ¶ 80 (reviewing defendant's argument that evidence failed to support juvenile court's probable cause finding despite defendant's guilty plea); *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 1, fn. 1 ("A guilty plea made following a bindover or transfer from the juvenile division does not waive the right to appeal the bindover or transfer.").

{¶ 27} Notwithstanding the Fourth and Seventh District's interpretation of the procedural issues addressed by the Ohio Supreme Court in *Smith*, we need not resolve the issue of waiver because, as detailed below, the juvenile court's amenability finding is supported by sufficient information in the record.

{¶ 28} In this case, Walker does not dispute that he was at least 14 years old at the time of the shooting and that there was probable cause to believe he committed the acts charged. Rather, his argument on appeal is limited to the juvenile court's amenability determination. Specifically, Walker contends that the juvenile court abused its discretion in finding that he was not amenable to juvenile sanctions because "the court either did not appropriately weigh relevant factors

against transfer or disregarded these factors entirely." We find no merit to Walker's position.

{¶ 29} Contrary to Walker's assertion on appeal, our review of the record reveals that the juvenile court considered all relevant factors, including Walker's age, his maturity, his conduct, and his lack of intervention within the juvenile system. In balancing the pertinent factors, the trial court heard arguments from the opposing parties and relied extensively on the evidence adduced at the probable-cause hearing and the information set forth in the diagnostic evaluation completed in preparation for the amenability hearing. Ultimately, however, the juvenile court determined that various factors set forth under R.C. 2152.12(D), namely the seriousness and severity of Walker's conduct, warranted the conclusion that Walker "is not amenable to be rehabilitated in the juvenile system and that the safety of the community may require that he be held beyond his twenty-first birthday." (Tr. 22, 24.)

{¶ 30} Moreover, we find the juvenile court's findings and its discussion of the applicable factors under R.C. 2152.12(D) and (E) are supported by the preponderance of the evidence. In this case, the record reflects that Walker was the principal offender in an egregious act of violence that resulted in the death of two young men in this community. Walker used a 9 mm handgun to facilitate the crime and fired the weapon approximately nine times. The victims did not provoke the offenses and had their backs turned to Walker at the time the shooting commenced. *See State v. Hennings*, 8th Dist. Cuyahoga Nos. 108043, 108044, and 108045, 2019-

Ohio-4675, ¶ 25 ("The severity of a crime can be a strong indicator that there remains insufficient time to rehabilitate a child offender in the juvenile justice system."), citing *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 43 (8th Dist.), and *State v. Amos*, 1st Dist. Hamilton No. C-150265, 2016-Ohio-1319, ¶ 43 (a juvenile court can consider the number and nature of the committed offenses when determining if the child is amenable to the juvenile justice system). The diagnostic evaluation further established that Walker has previously refused to engage in counseling services and has consistently engaged in physical altercations, both at school and in the juvenile detention center. (Tr. 11.) Relatedly, the evaluation revealed that Walker's cognitive abilities are appropriate for his age and that he does not suffer from an intellectual disability or "a major mental disorder that is affecting his ability to perceive reality." (Tr. 16.) In addition, Walker demonstrated a level of emotional, physical, and psychological maturity during the pendency of this matter. As noted by the juvenile court, Walker often associates with "older peers" and "is displaying a higher level of sophistication and maturity and [is] using these emerging skills in a criminogenic manner." (Tr. 14, 16.)

{¶ 31} While Walker may disagree with the weight afforded to the relevant statutory factors, this is insufficient to show that the juvenile court's findings were based upon erroneous facts or an unreasonable, arbitrary, or capricious application of R.C. 2152.12. *See Jordan,* 8th Dist. Cuyahoga No. 111547, 2023-Ohio-311, at ¶ 12; *State v. Cunningham,* 6th Dist. Lucas No. L-21-1136, 2022-Ohio-3497, ¶ 100.

Accordingly, we decline to find the juvenile court's relinquishment of jurisdiction constituted an abuse of discretion.

{¶ 32} The first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶ 33} In this second assignment of error, Walker argues he was deprived of his constitutional right to effective assistance of counsel during the amenability proceedings.

{¶ 34} To prevail on a claim of ineffective assistance of counsel, Walker must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Properly licensed Ohio lawyers are presumed to be competent, *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, and there are "countless" ways for an attorney to provide effective assistance in a case, so "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *State v. Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 35} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him or her of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland* at 687. The failure to prove either prong of this two-part test makes it

unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 36} Counsel is "strongly presumed" to have rendered adequate assistance and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985), quoting *Strickland* at 694-695. Generally, trial strategy and tactical decisions — even debatable ones — cannot form the basis of a claim of ineffective assistance of counsel.

{¶ 37} In this case, Walker argues that defense counsel rendered ineffective assistance of counsel during the amenability proceeding by failing to sufficiently articulate "the importance of [his] adolescent stage of development, why there was appropriate time and resources in the juvenile system to rehabilitate him, and the importance of keeping him in the juvenile system."

{¶ 38} Ordinarily, "[a] claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing and voluntary." *State v. Slater,* 8th Dist. Cuyahoga No. 111536, 2023-Ohio-608, ¶ 55 (collecting cases). To prevail on an ineffective assistance of counsel claim in such circumstances, the defendant must show that he was prejudiced by demonstrating a reasonable probability that but for counsel's errors, he would not have pled guilty to the charged offenses and would have instead insisted on going to trial. *State v. Houk*, 8th Dist. Cuyahoga No. 110115, 2021-Ohio-2107, ¶ 20, citing *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 30

(8th Dist.); *State v. Xie,* 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶ 39} In this case, Walker does not contend that counsel's performance invalidated his guilty pleas. *See, e.g., Powell*, 4th Dist. Gallia No. 20CA3, 2021-Ohio-200, ¶ 50-51 (finding the defendant's guilty plea waived his ability to raise an ineffective assistance of counsel claim challenging counsel's performance at the probable cause hearing); *State v. Ramos*, 8th Dist. Cuyahoga No. 104550, 2017-Ohio-934, ¶ 2 (rejecting ineffective assistance of counsel claim where defendant did not contest validity of plea). Nevertheless, assuming, arguendo, that Walker's guilty plea did not waive the ineffective assistance of counsel claims posed in this appeal, we find his position to be without merit.

{¶ 40} After careful review of the proceedings in their entirety, we are unable to conclude that defense counsel rendered ineffective assistance of counsel in this instance. As discussed, defense counsel succinctly argued at the amenability hearing that the juvenile court should retain jurisdiction over Walker's case based on his youth, his lack of a juvenile record, and the amount of time Walker would be eligible for rehabilitative services in a juvenile detention center. (Tr. 9-10.) To the extent Walker suggests defense counsel *could* have raised "significantly stronger" arguments during the amenability hearing, we decline to second-guess counsel's strategy.

{¶ 41} The second assignment of error is overruled.

**{¶ 42}** Judgment affirmed. Case remanded for the trial court to issue a nunc pro tunc entry to correct the clerical errors in the sentencing journal entry.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR